UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| AGUSTIN OVIDIO VEGA ARRUE | CIVIL ACTION NO. 26-0144 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| ELEAZAR GARCIA, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

## REPORT AND RECOMMENDATION

Petitioner Agustin Ovidio Vega Arrue,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2]   Respondents oppose the petition. [doc. # 13].  For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of El Salvador.  He entered the United States of America "without inspection in November of 2022 and has been living in the United States for the past 23 years." [doc. # 1, p. 1].  He "never encounter[ed] immigration enforcement officers" until October 13, 2025.  *Id.* at 5.

---

[1] Petitioner's "A Number" is 254-046-371.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On July 3, 2025, "Petitioner applied for T-visa as a victim of severe forms of human trafficking with United States Citizenship and Immigration Services (USCIS), and his application remains pending."  [doc. # 1, p. 2].

Petitioner was taken into immigration custody on October 13, 2025, following a traffic stop.  [doc. # 1, pp. 1, 5].  The same day, "DHS issued Petitioner a Notice to Appear (NTA), charging him with having entered the United States without admission or parole."  *Id.* at 2.

"On November 30, 2025, Petitioner filed a motion to terminate with the immigration court based on his pending T-visa application.  That motion was originally denied, however, after Petitioner filed a motion to reconsider the decision, removal proceedings were terminated December 17, 2025."  [doc. # 1, p. 2].  But, then, "[a]fter those removal proceedings were terminated, DHS once again filed and identical NTA against Petitioner, again charging him with having entered the United States without admission or parole."  *Id.*

Petitioner filed this proceeding on approximately January 18, 2026.  He claims: "Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered the United States and have been living in the United States for years.  Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond.  That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection and have been living in the United States for many years."  [doc. # 1, p. 3].  He also claims that his detention violates "the Due Process clause of the Fifth Amendment."  *Id.* at 2.  He argues that he "has a fundamental interest in being free from detention, which is the 'most elemental of liberty interests.'"  *Id.* at 14.

Respondents opposed the petition on March 13, 2026.  [doc. # 13].  They first argue, "Petitioner is subject to mandatory detention pursuant to the Fifth Circuit's decision in

2

*Buenrostro v. Bondi*." *Id.* at 16.  They also argue, "Petitioner's mandatory detention does not violate due process under the Fifth Amendment." *Id.*

Petitioner did not file a reply.

On April 6, 2026, an immigration judge ordered Petitioner removed from the United States.  *See* https://acis.eoir.justice.gov/en/caseInformation (last visited April 23, 2026).

<u>**Law and Analysis**</u>

**I. 8 U.S.C. § 1225 Versus 8 U.S.C. § 1226**

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years.  *Buenrostro-Mendez*, 166 F. 4th at 502.  In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225.  *Id.*  The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A).  *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225.  Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum."  Plainly, Section 1225 does not authorize release on bond.  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  Petitioner is, therefore, not statutorily entitled to a bond hearing.  The Court should dismiss his statutory claim accordingly.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles him to a bond hearing.  In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States.  He was detained for expedited removal.  An asylum officer rejected his credible fear claim.  Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum.  In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause.  Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens.  Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"  140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute.  Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights.  In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001).  In *Zadvydas*, two aliens were held pending removal after final order of deportation.  However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a).  The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported.  *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. *See also Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. An immigration judge ordered him removed on April 6, 2026, and Petitioner still has time to appeal if he chooses. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited April 23, 2026). If Petitioner chooses to appeal, his appeal will likely extend his detention until the BIA decides his appeal. Petitioner's detention will likely end (i) when his order of removal becomes final (when the time to appeal elapses and he chooses not to appeal or, if he appeals, when the BIA affirms the order of removal or dismisses the appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor (again, if he chooses to appeal). Accordingly, the Court should deny Petitioner's claim.

### III. Procedural Due Process

Petitioner does not appear to raise a procedural due process claim. At best, he mentions that he has a fundamental interest in freedom from detention. [doc. # 1, p. 14]. He also cites other district courts which found that petitioners established liberty interests by establishing a life in the United States "albeit without authorization[.]" *Id.* Out of caution, the undersigned will examine this ostensible claim.

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the

6

probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).[4]

Here, the first factor above weighs in Petitioner's favor as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259 (2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Living in the United States for approximately 23 years (albeit, not on parole, bond, or other supervision), Petitioner established a liberty interest.  *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (noting that "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these [aliens] from deprivation of life, liberty, or property without due process of law" whether they are here unlawfully or not).  He "owns his home and started a business which he has maintained in good standing." [doc. # 1, p. 12].  He "lived with his wife and was the main source of support for the family.  Without him present, his wife has had to rely on their adult children to assist her in making ends meet." *Id.*  At bottom, he established his life in this country. Terminating his valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at *3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United

---

[4] Neither party addresses the *Mathews* factors.

States, regardless of their citizenship status.").[5]  That said, Petitioner always knew that he was in the United States without permission, which qualifies his liberty to a degree.[6]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—leans in Respondents' favor.  Petitioner does not offer any reason why not providing process to him before he was detained—i.e., before the Government terminated his liberty interest—risked error.  The Government has provided process after detaining him in the form of a Notices to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and the opportunity to appeal.  [doc. #s 9-1; 9-4; 9-5].  He has received opportunities to be heard on relevant issues such as his identity, whether he is "an alien present in the United States who has not been admitted or paroled,"[7] the country of which he is a citizen, the country or countries which might accept him, when he entered the country, and whether he is entitled to asylum or other protection.

Petitioner appears to seek only post-deprivation process in the form of a bond hearing. From what the undersigned can glean, he appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain him under 8 U.S.C. §

---

[5] Of note, some courts have even held that a convicted prisoner mistakenly released from federal prison is entitled to procedural due process in the form of a hearing before reincarceration.  *See, e.g.*, *Hurd v. Dist. of Columbia, Gov't*, 864 F.3d 671, 682 (D.C. Cir. 2017).

[6] *See generally Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000) ("A prisoner who is mistakenly released does not have a protected liberty interest because, unlike a parolee, he does not have a 'legitimate claim of entitlement' to freedom.").

[7] [doc. # 9-1, p. 2].

1225.  Thus, even if a neutral decisionmaker determined that he was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published.  The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6.  Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*"  *Id.* at 8 (emphasis added).  Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders.  *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain him and remove him.[8]  Relevant issues, for example, include his identity, citizenship, whether he was ever admitted or paroled,[9] when he entered this country, and whether he is entitled to protection from removal.  And as explained above the Government has already provided process for these issues. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC §

---

[8] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding."  *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).  Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that he is entitled to release for urgent humanitarian reasons or for significant public benefit.  And even if he did, he had and has the opportunity to present such a contention in his removal proceedings.  *If* the Secretary of Homeland Security agreed, *then* Petitioner could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

[9] [doc. # 1-7, p. 1].

1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Petitioner does not claim that the Government failed to provide him process before detaining him and terminating his liberty interest. In this respect, and as explained above, the Government has provided him post-deprivation process in the form of notice and opportunities to be heard and to respond. All of this is to say that there is little, if any, risk of error in terminating his liberty without providing him a post-deprivation bond hearing.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—weighs in the Government's favor. The Government has a significant interest in protecting the community and preventing flight. Petitioner eluded immigration authorities for approximately 23 years, demonstrating that he is a possible flight risk. Thus, affording him a bond hearing could burden the Government's interest in preventing flight. And out of caution and even assuming Petitioner sought pre-deprivation process, providing it to him and others who entered the United States without permission—i.e., providing notice of the intent to detain them *before* detaining them— would create an appreciable risk of evasion before arrest/detention.

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

<u>**Recommendation**</u>

For reasons above, **IT IS RECOMMENDED** that Petitioner Agustin Ovidio Vega Arrue's petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 27th day of April, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge